**Opinion issued August 6, 2020**



In The

# Court of Appeals

### For The

# First District of Texas

———————————

## NO. 01-18-00917-CV

———————————

## IN RE COMMITMENT OF BILLY JOE BURD, Appellant

**On Appeal from the 149th District Court**
**Brazoria County, Texas**
**Trial Court Case No. 93025-CV**

### O P I N I O N

In this case, the State filed a petition seeking to have appellant, Billy Joe Burd, civilly committed under Texas's Sexually Violent Predators Act (SVP Act). *See* TEX. HEALTH & SAFETY CODE ANN. §§ 841.001–.153. A jury determined that Burd is a sexually violent predator, and the trial court signed an order of civil commitment. In four issues, Burd contends that (1) the trial court lacked jurisdiction over this

proceeding because the State did not file its petition in the court that had convicted Burd of his most recent sexually violent offense; (2) the trial court erroneously admitted evidence concerning the statutory screening process for determining whether an individual is eligible to be committed as a sexually violent predator; (3) the trial court erroneously allowed the State's expert witness to testify that a non-testifying expert had determined that Burd has a behavioral abnormality; and (4) the trial court erroneously admitted the expert witness's testimony describing the contents of an unauthenticated audiotape.

We affirm.

## Background

It is undisputed that Burd has three convictions for sexually violent offenses: two indecency with a child offenses in Harris County in 1996 and one indecency with a child offense in Brazoria County in 2003. The complainants in the 1996 offenses were Burd's stepdaughters. Burd pleaded guilty to the 1996 offenses, and the Harris County trial court deferred adjudication of guilt and placed Burd on community supervision. After Burd was convicted of the 2003 offense in Brazoria County, the Harris County court revoked Burd's community supervision and adjudicated his guilt for the 1996 offenses. In addition to these three convictions, Burd was also charged with aggravated sexual assault of a child in 1989, but that charge was dismissed and did not lead to a conviction. The complainant in the 1989

2

case was one of Burd's stepdaughters, and this child was also the complainant for one of the 1996 offenses.

The Brazoria County trial court assessed Burd's punishment for the 2003 offense at seventeen years' confinement. In August 2017, as Burd's period of confinement for this offense was coming to an end, the Brazoria County District Attorney's Office and the Special Prosecution Unit filed a petition in the 149th District Court of Brazoria County seeking to have Burd civilly committed as a sexually violent predator under the SVP Act. The State alleged as follows under the "Jurisdiction and Venue" section of its petition:

> The 149th District Court of Brazoria County, Texas, has jurisdiction and venue over this matter pursuant to Section 841.041(a) of the [Texas] Health and Safety Code, as this is the court of conviction for [Burd's] most recent sexually violent offense. The 149th Judicial District Court was acting on behalf of the 23rd Judicial District Court because the 23rd Judicial District Court handled all felony cases prior to January 1, 2013 in Brazoria County pursuant to local rule. A copy of the "Order Equalizing Caseloads and Dividing the Docket" is attached hereto as Exhibit "A," and incorporated herein by reference. Judge Robert E. May, who presided over the 149th Judicial District Court, signed the judgment of conviction which was styled the 23rd Judicial District Court. A copy of the "Judgment on Jury Verdict of Guilty" for Cause No. 42,896 [the 2003 offense] is attached hereto as Exhibit "B," and incorporated herein by reference.

The State alleged in its petition that Burd has convictions for three sexually violent offenses, as defined under the SVP Act, and that Burd "suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence." The State requested that, upon a jury finding that Burd is a sexually violent predator,

3

that the trial court commit him for treatment and supervision pursuant to the SVP Act.

The State attached two documents to its petition. The first, entitled "Order Equalizing Caseloads and Dividing the Docket," was signed by the five district judges of Brazoria County on December 28, 2012. This order stated:

> On June 16, 1977 the Judges of the District Courts of Brazoria County, Texas entered an Order Equalizing Caseloads and Dividing the Docket (hereafter called the Order). On December 27, 1977 the Order was amended (hereafter called the Amended Order).
>
> Since 1977 the Courts of Brazoria County have from time to time further amended the Order and the Amended Order by actions taken at duly called meetings of the Judges of the District Courts of Brazoria County, Texas, but it has been called to the attention of the District Judges that the method of allocating all felony cases to the 23rd District Court on a combined docket has caused some confusion.

The district judges then agreed that, effective January 1, 2013, the docket for the Brazoria County district courts should be divided in a different way. The order provided, among other things, that most civil and most criminal cases "shall be filed on a pro rata basis among" the district courts; and it set out a percentage of filings in each court. This order also stated, "A matter pending in any of the above mentioned Courts may be heard by any judge having jurisdiction, with permission of both judges involved, without necessity of a formal transfer."

The State also attached to its petition the judgment of conviction and sentence for Burd's 2003 offense. The three documents that made up this exhibit were all

4

captioned, "In the 23rd Judicial District Court of Brazoria County, Texas," but they were all signed by the Honorable Robert May, who was, at the time, the presiding judge of the 149th District Court of Brazoria County.

Burd moved to dismiss the State's petition for lack of jurisdiction, arguing that the State improperly filed its petition in the 149th District Court when it should have filed the petition in the 23rd District Court. Burd argued that section 841.041(a) of the SVP Act provides that if the State decides to file a petition seeking civil commitment of an alleged sexually violent predator, it must file the petition "in the court of conviction for the person's most recent sexually violent offense." *See* TEX. HEALTH & SAFETY CODE ANN. § 841.041(a). Burd argued that only the court of conviction for the most recent qualifying offense has jurisdiction under the SVP Act. He stated:

> [The State's] Original Petition itself identifies the 23rd District Court as the court of [Burd's] most recent qualifying [offense]. The mere fact that a different judge was sitting for the 23rd District Court does not allow the petitioner to disregard the plain language of the statute and file this case in a court that does not have jurisdiction. This is no different than when a visiting Judge is sitting[:] the court remains the same, only the judge is different.

Burd argued that because the 23rd District Court is the only court with jurisdiction, not the 149th District Court, the trial court must dismiss the State's petition with prejudice.

5

In response, the State acknowledged that the judgment of conviction for Burd's 2003 offense listed the 23rd District Court "as the court of judgment." The State argued that, prior to January 1, 2013, "all felony cases were filed in the 23rd Judicial District Court in Brazoria County pursuant to a local rule, and the cases were on a combined docket." It further argued, "The 149th Judicial District Court was acting on behalf of the 23rd Judicial District Court pursuant to this local rule. This is why Judge Robert May, who presided over the 149th Judicial District Court, signed the [judgment] which was styled in the 23rd Judicial District Court."

As evidence, the State attached a 1977 order and the 2012 order—which the State had previously attached to its original petition—signed by the judges of the Brazoria County District Courts concerning docket equalization among the courts. The 1977 docket equalization order provided that "[a]ll felony cases shall be filed in the 23rd District Court and shall be a combined docket. All courts having jurisdiction shall designate an appropriate number of weeks to hear criminal matters." This order also contained a provision relating to the transfer of cases, stating, "A matter pending in any of the above mentioned courts may be heard by any judge having jurisdiction, with permission of both judges involved, without necessity of a formal transfer." The State also attached five motions and orders filed during the pendency of Burd's 2003 offense, all of which were styled in the 149th District Court. One of these exhibits, an "Order for Pretrial Hearing and Setting Case for Trial," was styled "In

6

the District Court of Brazoria County, Texas 149th Judicial District" and stated: "On this the **16TH DAY OF JULY, 2002** the above entitled and numbered cause(s) is (are) hereby set for pre-trial hearing in accordance with Art. 28.01, [Code of Criminal Procedure], on **SEPTEMBER 11, 2002** AT **9:00 A.M.** in the **149TH DISTRICT COURT** of Brazoria County, Texas."

After an oral hearing, the trial court denied Burd's motion to dismiss the petition for lack of jurisdiction.

The case proceeded to trial in the 149th District Court. The State's sole witness was Dr. Timothy Proctor, a psychologist who evaluated Burd to form an opinion on whether Burd has a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence, such that he meets the criteria for civil commitment under the SVP Act. Dr. Proctor testified that he had conducted approximately seventy behavioral abnormality evaluations since 2006 and that he had been hired by several different offices to complete these evaluations. Specifically, he had been hired by the Texas Department of Criminal Justice, which has "something called a multidisciplinary team to do these evaluations," the Special Prosecution Unit, the State Counsel for Offenders, and defense attorneys. The following exchange then occurred:

| | |
|---|---|
| The State: | So being a doctor who has done multiple evaluations for the multidisciplinary team, is there a screening process that occurs before you do the initial evaluation? |

7

| | |
|---|---|
| Dr. Proctor: | Yes. |
| Defense counsel: | Objection, Your Honor. May we approach? |
| The Court: | Sure. |
| Defense counsel: | I just want to put my objection on the record regarding how that process creates—talking about the process creates prejudice and [its] probative value is highly prejudicial and how it affects my client about the fact that they have decided that Mr. Burd suffers from behavioral abnormality. |
| . . . . | |
| The State: | I was just explaining the process by which case it's coming to. It's related to the experience that Dr. Proctor has to explain that to the jury. I haven't gotten to doctor—his opinion at this point, so I was just referring to the process so they understand his experience. |
| Defense counsel: | My objection is the whole process. The whole process within itself, it's my position that it's prejudicial to talk about how it came about. |
| The Court: | Okay. I understand that you're objecting to any discussions regarding the process about which your client was evaluated. |
| Defense counsel: | That's it. |
| The Court: | I will overrule the objection. |

Dr. Proctor then testified that he had conducted around twenty-five evaluations as part of the multidisciplinary team and that all of those individuals had at least two prior sexual offenses. He also testified that, on around four or five occasions, he had concluded as a member of the multidisciplinary team that the individual being evaluated did not have a behavioral abnormality.

8

Dr. Proctor stated that he was not part of the multidisciplinary team for Burd's case, but another psychologist, Dr. Stephen Thorne, was, and Dr. Thorne had also conducted an evaluation of Burd. Dr. Proctor testified that, in accordance with standard practices, he reviewed and relied upon Dr. Thorne's report from the evaluation he conducted of Burd. When asked why he relied upon Dr. Thorne's report, Dr. Proctor stated:

> I relied on it because it deals directly with the matters that are relevant to my evaluation as historical information that is relevant to my evaluation. It's another individual who asked the kinds of questions that I would ask so I can get the answers Mr. Burd provided to Dr. Thorne and compare them to the answers that I received to other information in the record. I can see what another professional who does these evaluations determined in terms of diagnosis in terms—determine in terms of the issues at hand, and so it's, you know, the kind of information that you commonly rely upon in my work. You look at a lot of records. Some are more on point than others. This is certainly very much on point with what I'm doing.

The State then asked Dr. Proctor what Dr. Thorne's opinion was concerning whether Burd had a behavioral abnormality.

Defense counsel objected to this question based on hearsay and requested a running objection to any questions concerning Dr. Thorne's evaluation of Burd. In response to defense counsel's objection, the State argued that "Dr. Proctor is a testifying expert. He's allowed to disclose hearsay information to show the basis of his opinion under Rule 705." The trial court overruled defense counsel's objection and gave the following instruction to the jury:

9

With respect to an instruction related to hearsay, ladies and gentlemen of the jury, the expert has testified and will testify regarding hearsay. Hearsay is a statement made by a person at some time other than while testifying at the current trial or hearing which a party offers into evidence to prove the truth of the matter asserted in the statement. Generally hearsay is not admissible as evidence during the trial. However, in this case certain hearsay information contained in records was reviewed and relied upon by an expert, by experts, and will be presented to you through their expert testimony. Such hearsay evidence is being presented to you only for the purpose of showing the basis of the expert's opinion and cannot be considered as evidence to prove the truth of the matter asserted. You may not consider the hearsay information for any other purpose including whether the facts alleged or the records are true.

Dr. Proctor then testified that Dr. Thorne's opinion was that Burd suffers from a behavioral abnormality.

Dr. Proctor testified concerning the methodology that he follows when he conducts behavioral abnormality evaluations, noting that, in addition to a face-to-face interview with the individual, reviewing historical records is a primary component. The relevant records generally include any law enforcement records concerning allegations or convictions for sexual offenses, Child Protective Services records, court documents, prison records, deposition transcripts, and evaluations from the multidisciplinary team. Dr. Proctor testified that it is not typical for an evaluator to conduct an independent verification of the records that are reviewed.

While Dr. Proctor was testifying concerning Burd's 1996 offenses against his two stepdaughters, Dr. Proctor mentioned "there was ultimately a recording where [one of Burd's stepdaughters] recorded a conversation between her and Mr. Burd

10

about this offending." Defense counsel objected on the basis of hearsay, and the trial court sustained the objection "[a]t this point." Dr. Proctor testified that, during his review of the historical records, he reviewed and relied upon a summary of the recording between Burd and his stepdaughter. The following exchange occurred:

The State: So, Dr. Proctor, what did the recording indicate transpired between Mr. Burd and [his stepdaughter]?

Defense counsel: Objection, 901. There is an issue of authentication in this case regarding this tape that was never listened to by me, counsel, or Dr. Proctor.

The Court: Response, if any?

The State: I'm not offering the audio recording into evidence and so for authentication purposes, I'm asking Dr. Proctor if that's information he reviewed and relied upon which he did; so under 705, he would be able to testify about the basis of his opinion.

Defense counsel: I also object, 403. The probative value of talking about an audiotape is essentially outweighed by the prejudice it's causing in this case.

The Court: It's my understanding that this is a statement by someone else, that he didn't actually hear the audiotape, is that correct?

The State: That's correct, Your Honor.

The Court: All right. Under the circumstances as the records reflect that this is a—why don't you lay out predicate of what this is, please.

The State: Dr. Proctor, did you listen to an audio recording that's referenced in the records?

Dr. Proctor: No.

. . . .

11

The State:       Dr. Proctor, what specifically did you review in the records related to Mr. Burd?

Dr. Proctor:     I reviewed law enforcement records from 1996 where an officer documents what he heard in a taped conversation between [Burd's stepdaughter] and Mr. Burd and what was contained on the recording of that conversation.

The State:       Did you personally listen to that recording?

Dr. Proctor:     No.

The State:       Okay. Is your understanding that that recording has since been destroyed?

Dr. Proctor:     Yes.

The State:       Okay. Did you still take into consideration in forming your opinion the information that you reviewed from the detective's notes related to that recording?

Dr. Proctor:     Yes.

The State:       Based on that, what information from the detective's notes about this audio recording did you take into consideration in forming your opinion?

Dr. Proctor:     The content which I can get into of what was said between [Burd's stepdaughter] and Mr. Burd on that recording.

The State:       What was the content of that?

Dr. Proctor:     That—and pardon some of the language I will use. That Mr. Burd talked to [his stepdaughter] about him touching the girls and touching their, quote, titties; that he told them that he admitted that he had done it several times; and that he said it wasn't molesting. It was loving them; that he asked if [his stepdaughter] would allow him to rape her. And she said no. He said that he would teach her anything that she wanted and that it didn't have to hurt; and

12

that he considered it an honor for her to let him touch her; and that he loves her and likes touching her and it makes him feel good that she lets him do that.

Defense counsel did not object to the State's question about the content of the detective's notes concerning this audio recording. Dr. Proctor testified that the detective's notes were relevant to his overall opinion for several reasons: Burd admitted offending behaviors, his statements were indicative of grooming, and his statements indicated "attitudes that condone sexual offending," which is a risk factor for re-offending.

Dr. Proctor did not find Burd to be credible during his evaluation, and he stated that there were several inconsistencies "between what he was telling me and what he had told other people even recently [including Dr. Thorne] and statements he had made in the past that were documented." With respect to the incidents with his stepdaughters, Burd either did not mention anything about the offenses to Dr. Proctor, or he admitted the contact but denied that it was intentional or sexual. Dr. Proctor opined that Burd has a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. Specifically, Dr. Proctor testified that there was "significant evidence in the record of [Burd's] having a sexual interest in non-consenting persons, in particular, prepuberty children," and he diagnosed Burd with having pedophilic disorder. Dr. Proctor took into consideration not just Burd's three uncontested convictions, but also the allegations of aggravated sexual assault

of a child from 1989 and other unadjudicated allegations from around the same time as the acts that formed the basis of the 2003 offense, stating that an evaluator "want[s] to get at the totality of the person's sexual history and sexual offense history" and that it is necessary "to look at everything," even if particular allegations do not lead to a criminal conviction.

> The jury charge included the following instruction:
>
> Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered to prove the truth of the matter asserted. Certain hearsay information contained in records reviewed by the experts was admitted before you through expert testimony. Such hearsay was admitted only for the purpose of showing the basis of the experts' opinion and cannot be considered as evidence to prove the truth of the matter asserted.

The charge instructed the jury that a person is a sexually violent predator if the person is a repeat sexually violent offender and "suffers from a behavioral abnormality that makes the person likely to engage in a predatory act of sexual violence." The trial court granted a directed verdict in favor of the State on the question of whether Burd had more than one conviction for a sexually violent offense in which a sentence had been imposed and was, therefore, a "repeat sexually violent offender," and the charge informed the jury of this. The sole question in the jury charge was, "Do you find beyond a reasonable doubt that BILLY JOE BURD is a sexually violent predator?" The jury answered "Yes."

The trial court subsequently signed a civil commitment order under the SVP Act and a final judgment ordering that Burd is a sexually violent predator and that he is to be civilly committed. Burd moved for a new trial, which was overruled by operation of law. This appeal followed.

## Jurisdiction

In his first issue, Burd argues that the trial court erroneously denied his motion to dismiss the case for lack of jurisdiction. Specifically, Burd argues that the SVP Act requires the State to file a civil commitment petition in the "court of conviction for the person's most recent sexually violent offense," but the State filed its petition in the 149th District Court of Brazoria County instead of the 23rd District Court of Brazoria County, the court in which Burd was convicted of his most recent offense.

### A.    *Standard of Review and Relevant Law*

Subject-matter jurisdiction is essential to a court's power to decide a case. *City of Houston v. Rhule*, 417 S.W.3d 440, 442 (Tex. 2013) (per curiam) (quoting *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 553–54 (Tex. 2000)). Whether a particular court has subject-matter jurisdiction is a question of law that we review de novo. *Wheelabrator Air Pollution Control, Inc. v. City of San Antonio*, 489 S.W.3d 448, 451 (Tex. 2016). In making this determination, we do not consider the merits of the case, but we instead look to the pleadings and any evidence relevant to the jurisdictional inquiry. *Bland Indep. Sch. Dist.*, 34 S.W.3d at 554; *Chicas v. Tex. Mut.*

*Ins. Co.*, 522 S.W.3d 67, 70 (Tex. App.—Houston [1st Dist.] 2017), *aff'd*, 593 S.W.3d 284 (Tex. 2019).

Texas district courts are courts of general jurisdiction. *Dubai Petroleum Co. v. Kazi*, 12 S.W.3d 71, 75 (Tex. 2000); *Assignees of Best Buy v. Combs*, 395 S.W.3d 847, 861 (Tex. App.—Austin 2013, pet. denied). Under the Texas Constitution, the jurisdiction of a district court "consists of exclusive, appellate, and original jurisdiction of all actions, proceedings, and remedies, except in cases where exclusive, appellate, or original jurisdiction may be conferred by this Constitution or other law on some other court, tribunal, or administrative body." TEX. CONST. art. V, § 8; *Dubai Petroleum*, 12 S.W.3d at 75. "By statute, district courts have 'the jurisdiction provided by Article V, Section 8, of the Texas Constitution,' and 'may hear and determine any cause that is cognizable by courts of law or equity and may grant any relief that could be granted by either courts of law or equity.'" *Dubai Petroleum*, 12 S.W.3d at 75 (quoting TEX. GOV'T CODE ANN. § 24.007 and TEX. GOV'T CODE ANN. § 24.008). Typically, we presume that all claims "fall within the jurisdiction of the district court unless the Legislature or Congress has provided that they must be heard elsewhere." *Id.* However, this presumption "does not apply to actions grounded in statute rather than the common law." *Id.*

The Texas Constitution provides that "the District Judges may exchange districts, or hold courts for each other when they may deem it expedient, and shall

16

do so when required by law." TEX. CONST. art. V, § 11; *Celestine v. Dep't of Family & Protective Servs.*, 321 S.W.3d 222, 227 (Tex. App.—Houston [1st Dist.] 2010, no pet.) ("The Texas Constitution and Government Code give district courts broad discretion to exchange benches and enter orders on other cases in the same county, even without a formal order memorializing the exchange or transfer."). "No formal order is needed for an exchange or transfer to take place." *Pinnacle Gas Treating, Inc. v. Read*, 160 S.W.3d 564, 566 (Tex. 2005) (per curiam). Government Code section 74.094(a) provides:

> A district or statutory county court judge may hear and determine a matter pending in any district or statutory county court in the county regardless of whether the matter is preliminary or final or whether there is a judgment in the matter. The judge may sign a judgment or order in any of the courts regardless of whether the case is transferred. The judgment, order, or action is valid and binding as if the case were pending in the court of the judge who acts in the matter.

TEX. GOV'T CODE ANN. § 74.094(a).

Government Code section 24.003 provides that, in counties with two or more district courts, a district court judge may, among other things, "transfer any civil or criminal case or proceeding on the court's docket . . . to the docket of another district court in the county," "hear and determine any case or proceeding pending in another district court in the county without having the case transferred," "sit for another district court in the county and hear and determine any case or proceeding pending in that court," and "temporarily exchange benches with the judge of another district

court in the county." *Id.* § 24.003(a)–(b); *see also id.* § 24.024 ("In a county with two or more district courts, the district judges may adopt rules governing the filing and numbering of cases, the assignment of cases for trial, and the distribution of the work of the courts as in their discretion they consider necessary or desirable for the orderly dispatch of the business of the courts."). District courts have these powers in both civil and criminal cases. *See, e.g.*, *Davis v. State*, 519 S.W.3d 251, 255–56 (Tex. App.—Houston [1st Dist.] 2017, pet. ref'd) (stating that any procedural challenge to transfer of criminal case within county "is thus determined and resolved by proper application of local rule promulgated pursuant to constitutional and statutory authority; it is not a jurisdictional defect"); *Celestine*, 321 S.W.3d at 227; *see also* TEX. CODE CRIM. PROC. ANN. art. 4.05 (providing that district courts have original jurisdiction in felony criminal cases); *Henderson v. State*, 526 S.W.3d 818, 820 (Tex. App.—Houston [1st Dist.] 2017, pet. ref'd) (same).

### B.    *Analysis*

Section 841.041(a) of the SVP Act provides that the attorney representing the State "may file, in the court of conviction for the person's most recent sexually violent offense, a petition alleging that the person is a sexually violent predator and stating facts sufficient to support the allegation." TEX. HEALTH & SAFETY CODE ANN. § 841.041(a). Burd argues that the "court of conviction" for his most recent sexually violent offense—the 2003 conviction for indecency with a child—is the

18

23rd District Court of Brazoria County, as stated in the caption of the judgment of conviction for that offense, and that that is the only court that has jurisdiction over this SVP proceeding. The State, on the other hand, argues that, pursuant to a Brazoria County local rule in effect at the time of that proceeding, although that felony proceeding was required to be filed in the 23rd District Court, the local rule also allowed for transfer of the proceeding to another Brazoria County district court, and that proceeding was, in fact, transferred to the 149th District Court, which heard pretrial matters and the trial. The State, therefore, argues that the 149th District Court was the "court of conviction" and that it properly filed its SVP petition in that court. We agree with the State.

In response to Burd's motion to dismiss for lack of jurisdiction, the State presented evidence concerning the filing of criminal cases in Brazoria County at the time of Burd's most recent sexually violent offense. Pursuant to a local rule enacted in 1977, all felony criminal cases in Brazoria County "shall be filed in the 23rd District Court and shall be a combined docket." The 1977 docket equalization order also provided that "[a]ll courts having jurisdiction shall designate an appropriate number of weeks to hear criminal matters," and the order included a transfer provision, which stated, "A matter pending in any of the above mentioned courts may be heard by any judge having jurisdiction, with permission of both judges involved, without necessity of a formal transfer." The State also attached several

19

motions and orders filed during the pendency of Burd's criminal proceeding in Brazoria County. Each of the motions filed by his defense counsel was captioned "149th District Court." Each of the orders signed by the trial court was signed by the Honorable Robert May, the presiding judge of the 149th District Court at the time. One order, an "Order for Pretrial Hearing and Setting Case for Trial," was styled "In the District Court of Brazoria County, Texas 149th Judicial District" and stated: "On this the **16TH DAY OF JULY, 2002** the above entitled and numbered cause(s) is (are) hereby set for pre-trial hearing in accordance with Art. 28.01, [Code of Criminal Procedure], on **SEPTEMBER 11, 2002** AT **9:00 A.M.** in the **149TH DISTRICT COURT** of Brazoria County, Texas." Judge May signed the judgment convicting Burd of the 2003 offense. The judgment and sentence, however, were captioned, "23rd District Court."

The Brazoria County district courts have constitutional, statutory, and local authority to transfer cases among them, and a formal order is not necessary to make a transfer effective. *See Pinnacle Gas Treating*, 160 S.W.3d at 566. The State's evidence indicates that although Burd's felony criminal proceeding was filed in the 23rd District Court, as required under the Brazoria County local rule, and the judgment of conviction stated "23rd District Court," all proceedings, including pretrial proceedings and the trial itself, occurred in the 149th District Court. A jury in the 149th District Court convicted Burd of indecency with a child in 2003. We

20

conclude that, despite the caption of the 2003 judgment and sentence stating "23rd District Court," the 149th District Court was the court of conviction for Burd's most recent sexually violent offense. *See* TEX. HEALTH & SAFETY CODE ANN. § 841.041(a). We hold that the 149th District Court had subject-matter jurisdiction over this SVP Act proceeding and that the trial court did not err by denying Burd's motion to dismiss the proceeding for lack of subject matter jurisdiction.

We overrule Burd's first issue.

### Evidentiary Issues

In his second issue, Burd argues that the trial court erred by admitting evidence concerning the statutory screening process for determining whether an individual is a sexually violent predator. Specifically, Burd complains that evidence about the multidisciplinary team and Dr. Thorne's evaluation of Burd during that process were highly prejudicial. In his third issue, he argues that the trial court erred by allowing Dr. Proctor to testify that Dr. Thorne, a non-testifying expert, found that Burd had a behavioral abnormality. Finally, in his fourth issue, Burd contends that the trial court erred by admitting Dr. Proctor's testimony concerning the contents of the audiotape discussed in the records of one of the 1996 offenses because this audio recording had not been authenticated.

21

***A.*** *Standard of Review*

We review a trial court's evidentiary rulings for an abuse of discretion. *In re Commitment of Stuteville*, 463 S.W.3d 543, 554 (Tex. App.—Houston [1st Dist.] 2015, pet. denied); *see Diamond Offshore Servs. Ltd. v. Williams*, 542 S.W.3d 539, 545 (Tex. 2018) ("The trial court has extensive discretion in evidentiary rulings, and we will uphold decisions within the zone of reasonable disagreement."). A trial court abuses its discretion when its evidentiary ruling is arbitrary, unreasonable, or without reference to any guiding rules or principles. *U-Haul Int'l, Inc. v. Waldrip*, 380 S.W.3d 118, 132 (Tex. 2012); *In re Commitment of Day*, 342 S.W.3d 193, 218 (Tex. App.—Beaumont 2011, pet. denied). If the trial court erred in admitting evidence, we will not reverse unless the error probably caused the rendition of an improper judgment. *U-Haul Int'l*, 380 S.W.3d at 132; *Stuteville*, 463 S.W.3d at 554; TEX. R. APP. P. 44.1(a)(1). In making this determination, we are required to review the entire record. *In re Commitment of Dunsmore*, 562 S.W.3d 732, 739 (Tex. App.—Houston [1st Dist.] 2018, no pet.).

***B.*** *Evidence of Dr. Thorne's Conclusion Concerning Behavioral Abnormality*

Burd argues that the trial court erred by allowing Dr. Proctor to testify that Dr. Thorne—who evaluated Burd as part of the multidisciplinary team—determined that Burd had a behavioral abnormality.

22

Texas Rule of Evidence 703 provides that an expert witness may base an opinion "on facts or data in the case that the expert has been made aware of, reviewed, or personally observed." TEX. R. EVID. 703. If experts in the particular field "would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted." *Id.*; *In re Commitment of Salazar*, No. 09-07-345-CV, 2008 WL 4998273, *4 (Tex. App.—Beaumont Nov. 26, 2008, pet. denied) ("When an expert relies upon hearsay in forming his opinion, and it is of a type reasonably relied upon by such experts, the jury is generally permitted to hear it."). Rule 705(d) provides:

> If the underlying facts or data would otherwise be inadmissible, the proponent of the opinion may not disclose them to the jury if their probative value in helping the jury evaluate the opinion is outweighed by their prejudicial effect. If the court allows the proponent to disclose those facts or data the court must, upon timely request, restrict the evidence to its proper scope and instruct the jury accordingly.

TEX. R. EVID. 705(d); *Sosa ex rel. Grant v. Koshy*, 961 S.W.2d 420, 427 (Tex. App.—Houston [1st Dist.] 1997, pet. denied) ("[U]nder rules 703 and 705, an expert is allowed to rely on hearsay evidence in reaching his conclusions and may testify about the basis for his conclusions, subject to an objection under [Rule] 403 that its probative value is outweighed by the risk of prejudicial harm."). "[T]he opponent of such evidence may ask for a limiting instruction if he fears the evidence may be used for a purpose other than support for the testifying expert's opinion." *Stam v. Mack*, 984 S.W.2d 747, 750 (Tex. App.—Texarkana 1999, no pet.).

23

Three of our sister courts have addressed whether an expert witness's testimony that a non-testifying expert previously determined that the individual has a behavioral abnormality constitutes permissible "basis" evidence that is admissible under Rule 705. Each of these courts has held that a non-testifying expert's opinion that the individual has a behavioral abnormality is "basis" evidence that the testifying expert may rely upon when formulating his opinion and may testify to at trial. *See, e.g.*, *In re Commitment of Tesson*, 413 S.W.3d 514, 520–21 (Tex. App.— Beaumont 2013, pet. denied); *see also In re Commitment of Johnson*, No. 05-17-01171-CV, 2019 WL 364475, at *6–7 (Tex. App.—Dallas Jan. 30, 2019, no pet.) (mem. op.); *In re Commitment of Barnes*, No. 04-17-00188-CV, 2018 WL 3861401, at *4–5 (Tex. App.—San Antonio Aug. 15, 2018, no pet.) (mem. op.); *In re Commitment of Barnes*, No. 05-17-00939-CV, 2018 WL 3490890, at *2–3 (Tex. App.—Dallas July 20, 2018, pet. denied) (mem. op.); *In re Commitment of Sawyer*, No. 05-17-00516-CV, 2018 WL 3372924, at *5–6 (Tex. App.—Dallas July 11, 2018, pet. denied) (mem. op.); *In re Commitment of Ochoa*, No. 09-15-00486-CV, 2016 WL 5417441, at *3–4 (Tex. App.—Beaumont Sept. 29, 2016, pet. denied) (mem. op.); *In re Commitment of Carr*, No. 09-14-00156-CV, 2015 WL 1611949, at *2 (Tex. App.—Beaumont Apr. 9, 2015, no pet.) (mem. op.).

Here, Dr. Proctor testified that Dr. Thorne was the psychologist on the multidisciplinary team who conducted the initial evaluation of Burd. Dr. Proctor testified:

> I relied on [Dr. Thorne's report] because it deals directly with the matters that are relevant to my evaluation as historical information that is relevant to my evaluation. It's another individual who asked the kinds of questions that I would ask so I can get the answers Mr. Burd provided Dr. Thorne and compare them to the answers that I received to other information in the record. I can see what another professional who does these evaluations determined in terms of diagnosis in terms—determine in terms of the issues at hand, and so it's, you know, the kind of information that you commonly rely upon in my work. You look at a lot of records. Some are more on point than others. This is certainly very much on point with what I'm doing.

Dr. Proctor agreed with the State that it is "standard practice in these types of cases to review and rely upon these reports."

After the State asked Dr. Proctor what Dr. Thorne's opinion was concerning whether Burd has a behavioral abnormality, Burd objected on the basis of hearsay. The trial court overruled the objection but, at Burd's request, gave the following limiting instruction:

> With respect to an instruction related to hearsay, ladies and gentlemen of the jury, the expert has testified and will testify regarding hearsay. Hearsay is a statement made by a person at some time other than while testifying at the current trial or hearing which a party offers into evidence to prove the truth of the matter asserted in the statement. Generally hearsay is not admissible as evidence during the trial. However, in this case certain hearsay information contained in records was reviewed and relied upon by an expert, by experts, and will be presented to you through their expert testimony. Such hearsay evidence is being presented to you only for the purpose of showing the basis of

25

the expert's opinion and cannot be considered as evidence to prove the truth of the matter asserted. You may not consider the hearsay information for any other purpose including whether the facts alleged or the records are true.

Dr. Proctor then testified that Dr. Thorne's opinion was that Burd has a behavioral abnormality. The trial court included an instruction that was substantially similar to its oral limiting instruction in the written jury charge.

Our sister courts have repeatedly held that a testifying expert in a SVP case may permissibly testify, pursuant to Rule 705(d), that a non-testifying expert determined that the individual has a behavioral abnormality as part of the basis for the testifying expert's opinion. We agree that this testimony is permissible under Rule 705. Dr. Proctor testified that he based his own expert opinion on several sources of information, including Dr. Thorne's report, which contained Thorne's determination that Burd has a behavioral abnormality. Prior to Dr. Proctor's testimony concerning Dr. Thorne's determination, the trial court properly restricted the scope of the jury's consideration of this evidence by giving a limiting instruction, which was later repeated in the jury charge. "Absent record evidence to the contrary, we presume that the jury followed the court's limiting instructions." *Stuteville*, 463 S.W.3d at 555. Here, there is no evidence in the record that the jury disregarded the trial court's limiting instructions and considered the evidence of Dr. Thorne's opinion "as evidence to prove the truth of the matter asserted" rather than as part of the basis for Dr. Proctor's expert opinion.

26

We conclude that the trial court did not abuse its discretion when it allowed Dr. Proctor to testify that Dr. Thorne had determined that Burd has a behavioral abnormality. *See, e.g.*, *Barnes*, 2018 WL 3490890, at \*2–3; *Sawyer*, 2018 WL 3372924, at \*6; *Carr*, 2015 WL 1611949, at \*2; *Tesson*, 413 S.W.3d at 520.

We overrule Burd's third issue.

## C.    *Evidence of SVP Screening Process*

Burd argues that the trial court erred by allowing Dr. Proctor to testify about the statutory screening process that an individual undergoes when the State seeks civil commitment under the SVP Act.

The SVP Act sets out the process that the Texas Department of Criminal Justice and the State must follow in determining whether to seek civil commitment of a sexually violent predator. *See* TEX. HEALTH & SAFETY CODE ANN. §§ 841.021–.023. This process includes an initial notice by the Department of Criminal Justice to the multidisciplinary team—which, by statute, must include several professionals, including mental health professionals, employees of the Department of Criminal Justice, a peace officer, and a licensed sex offender treatment provider—of the anticipated release of a person who is serving a sentence for a sexually violent offense and may be a repeat sexually violent offender. *Id.* § 841.021(a); *see id.* § 841.022(a) (setting out composition of multidisciplinary team).

27

Within sixty days of receiving notice, the multidisciplinary team must "assess whether the person is a repeat sexually violent offender and whether the person is likely to commit a sexually violent offense after release," give notice of that assessment to the Department of Criminal Justice, and "recommend the assessment of the person for a behavioral abnormality, as appropriate." *Id.* § 841.022(c). Once the multidisciplinary team recommends a behavioral abnormality assessment, the Department of Criminal Justice "shall use an expert to examine the person" to "assess whether the person suffers from a behavioral abnormality that makes the person likely to engage in a predatory act of sexual violence." *Id.* § 841.023(a). If, as a result of the assessment, the Department of Criminal Justice "believes that the person suffers from a behavioral abnormality," the Department shall give notice of the assessment "to the attorney representing the state for the county in which the person was most recently convicted of a sexually violent offense." *Id.* § 841.023(b). Within ninety days of the person being referred to the State's attorney, the State may file a petition seeking civil commitment under the SVP Act. *Id.* § 841.041.

The Dallas Court of Appeals has noted that "[n]o court in Texas has considered whether it is error to permit the State to introduce evidence or comment on the statutory administrative screening process over a timely objection." *In re Commitment of Cavazos*, No. 05-18-00894-CV, 2019 WL 2353446, at *4 (Tex. App.—Dallas June 4, 2019, pet. denied) (mem. op.). Both this Court and the

28

Beaumont Court of Appeals have held that allowing evidence concerning the statutory screening process does not constitute fundamental error, such that the individual may raise the issue for the first time on appeal without a timely objection in the trial court. *See In re Commitment of Fontenot*, 536 S.W.3d 906, 917 (Tex. App.—Houston [1st Dist.] 2017, no pet.); *In re Commitment of Mailhot*, No. 09-13-00270-CV, 2015 WL 182699, at *3 (Tex. App.—Beaumont Jan. 15, 2015, pet. denied) (mem. op.). The Dallas Court, in *Cavazos*, declined to determine whether admitting evidence of the statutory screening process was erroneous; instead, the court held that the individual in that case failed to demonstrate that the testimony "probably led to the rendition of an improper verdict" and thus was harmful. *See* 2019 WL 2353446, at *4–5. We reach the same result in this case.

Here, the State asked Dr. Proctor whether "there is a screening process that occurs before you do the initial evaluation" of the individual, and Dr. Proctor answered, "Yes." Dr. Proctor testified that he was not part of the multidisciplinary team for Burd, but that he has conducted evaluations for this team in approximately twenty-five other cases. He stated that all of the individuals that he evaluated as part of that process had at least two sexually violent offenses. He also stated that he has found, on approximately four or five occasions as part of the multidisciplinary team, that the individual did not have a behavioral abnormality. Dr. Proctor testified that he has conducted "a handful" of evaluations for the State Counsel for Offenders, that

29

he has been retained approximately five times by private defense attorneys, and that he has conducted thirty-five to forty evaluations for the Special Prosecution Unit. He agreed that he has conducted evaluations on behalf of the State and found no behavioral abnormality. This was the extent of Dr. Proctor's testimony concerning the screening process under the SVP Act.

We have already determined that the trial court did not err by allowing Dr. Proctor to testify that Dr. Thorne had previously evaluated Burd and concluded that he has a behavioral abnormality. In making his own determination, Dr. Proctor considered records from each of Burd's prior offenses, as well as information relating to unadjudicated offenses. Dr. Proctor also considered statements that Burd had made to Dr. Thorne that contradicted statements Burd made to Dr. Proctor, which Dr. Proctor considered to be important due to the short period of time that separated Dr. Thorne's and Dr. Proctor's evaluations of Burd. Dr. Proctor also testified concerning several actuarial measures that he scored after his interview with Burd, and he testified extensively concerning specific risk factors that he considered important in making his determination that Burd has a behavioral abnormality that makes him likely to engage in predatory acts of sexual violence.

Dr. Proctor testified that a screening process exists and that he has been involved in that process in other cases, but he was not involved in the screening process in this case. He stated that he has conducted behavioral abnormality

30

evaluations for several different parties, including the State and defense counsel, and that he has, even when hired by the State, determined on previous occasions that the individual did not have a behavioral abnormality. Dr. Proctor's testimony about the screening process was limited. This topic constituted a small portion of Dr. Proctor's overall testimony; he did not go into great detail concerning the levels involved in the screening process or how an individual progresses through the process; and, aside from mentioning Dr. Thorne's conclusion that Burd has a behavioral abnormality, Dr. Proctor did not testify that multiple people had, at various stages of the process, made a similar determination.

We conclude that, based on this record, Dr. Proctor's testimony concerning the statutory screening process "likely made no difference to the jury on the issue of whether [Burd] suffers a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence" and, therefore, probably did not lead to the rendition of an improper judgment. *See Cavazos*, 2019 WL 2353446, at \*4–5; *Stuteville*, 463 S.W.3d at 554 (stating that we review trial court evidentiary rulings for abuse of discretion and that we will not reverse unless any error in ruling probably caused rendition of improper judgment). We hold that, even if the trial court erred by allowing Dr. Proctor to testify concerning the statutory screening

process, any error in allowing this testimony was harmless.[1] *See* TEX. R. APP. P. 44.1(a)(1); *Stuteville*, 463 S.W.3d at 554.

We overrule Burd's second issue.

## D.    *Evidence of Contents of Audio Recording from 1996 Offense*

Finally, in his fourth issue, Burd contends that the trial court erred by allowing Dr. Proctor to testify concerning the contents of an audiotape—purportedly a recording made by one of Burd's stepdaughters of a conversation that she had with him—because the audiotape itself had not been authenticated. Among other arguments, the State responds that, because the State did not seek to introduce the

---

[1]    Burd cites to two out-of-state cases—the Kansas Supreme Court's decision in *In re Foster*, 127 P.3d 277 (Kan. 2006), and the Iowa Supreme Court's decision in *In re Detention of Stenzel*, 827 N.W.2d 690 (Iowa 2013)—for the proposition that admitting evidence concerning the statutory screening process under the SVP Act is reversible error because it unfairly "stacks the deck" against the individual. The Dallas Court of Appeals, in *In re Commitment of Cavazos*, found that both of these out-of-state cases were distinguishable from that case, and we conclude that they are distinguishable from this case as well. *See* No. 05-18-00894-CV, 2019 WL 2353446, at *4 n.4 (Tex. App.—Dallas June 4, 2019, pet. denied) (mem. op.). In both *Foster* (which involved the prosecutor's opening statement) and *Stenzel* (which involved admission of testimony), the jury heard that there were several levels of review to the statutory screening process, in which multiple professionals— including a judge making a probable cause determination in *Foster*—made a determination that the individual should be prosecuted for civil commitment as a sexually violent predator. *See Foster*, 127 P.3d at 280–88; *Stenzel*, 827 N.W.2d at 694–95, 704–08. Here, the jury heard only that there is a screening process, that Dr. Proctor had performed behavioral-abnormality evaluations as part of this screening process in the past, that he has conducted evaluations for several different offices, including for defendants, and that he has, on occasion, found that an individual does not have a behavioral abnormality. Dr. Proctor's testimony concerning the statutory screening process in this case is far more limited than that which was allowed by the trial courts in both *Foster* and *Stenzel*. We conclude that neither of those cases is persuasive authority in this case. *See Cavazos*, 2019 WL 2353446, at *4 n.4.

audiotape itself into evidence, the authenticity of the recording was not at issue and that Dr. Proctor's testimony concerning the detective's summary of the recording, which he reviewed, was admissible as basis evidence under Rule 705. We agree with the State.

Authentication of evidence is a condition precedent to admissibility and requires the proponent of the evidence to "make a threshold showing that would be 'sufficient to support a finding that the matter in question is what its proponent claims.'" *Tienda v. State*, 358 S.W.3d 633, 638 (Tex. Crim. App. 2012) (quoting TEX. R. EVID. 901(a)). When determining questions of authenticity, the trial court must decide the preliminary question of whether "the proponent of the evidence has supplied facts that are sufficient to support a reasonable jury determination that the evidence he has proffered is authentic." *Id.* The ultimate question of whether the item of evidence is what its proponent claims is a question for the fact finder. *Id.*

Here, Dr. Proctor testified generally concerning the methodology that he follows when determining whether an individual has a behavioral abnormality. A crucial part of his methodology is reviewing records, including records from the individual's criminal offenses, and he testified that he typically does not re-interview witnesses. With respect to specific items that he considered in reaching his conclusions, Dr. Proctor testified concerning an audio recording relevant to one of Burd's 1996 convictions for indecency with a child. The records that Dr. Proctor

33

reviewed included a written summary, prepared by one of the detectives assigned to the criminal case, of an audio-recorded conversation purportedly between Burd and one of his step-daughters in which they discussed Burd's conduct. The recording itself was not included within the records, and Dr. Proctor testified that it had been destroyed and that he had not heard it himself.[2] Dr. Proctor testified concerning the contents of the detective's summary of the recording, and he explained how this summary was relevant to several risk factors for re-offending that he considered when reaching his expert opinion.

We agree with the State that, had the State sought to introduce the audiotape itself into evidence, authentication of the tape would be at issue and, upon objection by Burd, the State would need to make a threshold showing that the tape was what the State claimed it to be. The State did not, however, seek to introduce the audiotape because it had been destroyed. Instead, Dr. Proctor testified concerning the detective's written summary of the contents of the recording, which was contained within the criminal records that Proctor relied upon when reaching his conclusions. Dr. Proctor also testified that records from prior criminal cases are a key component

---

[2] We note that Burd's counsel cross-examined Dr. Proctor concerning the audio recording and the written summary that he reviewed. Dr. Proctor acknowledged on cross-examination that he had never heard the recording, that the tape itself no longer exists, that he knows who the particular detective who summarized the recording is but has never met him, that he did not "know anything about [the tape] being authenticated," and that the written summary did not mention whether the detective recognized the voices of either Burd or his step-daughter.

of his behavioral abnormality determination and are commonly relied upon by experts in this field. We agree with the State that the summary of the audio recording formed part of the basis of Dr. Proctor's opinion and that, even if the summary itself was inadmissible, Dr. Proctor could permissibly testify that he relied upon this summary under Rule 705. *See* TEX. R. EVID. 705(d); *cf. In re Commitment of Grice*, 558 S.W.3d 323, 328 (Tex. App.—Houston [14th Dist.] 2018, no pet.) ("Evidence concerning the facts underlying alleged previous sexual assaults has been ruled admissible in civil commitment cases when it assists the jury in understanding an expert's testimony that the person has a behavioral abnormality."); *In re Commitment of Talley*, 522 S.W.3d 742, 748 (Tex. App.—Houston [1st Dist.] 2017, no pet.) ("Evidence about the facts underlying previous sexual assaults is admissible in civil commitment cases when it assists the jury in understanding an expert's testimony that the person has a behavioral abnormality, which is the ultimate issue that the jury must determine.").

We conclude that the trial court did not abuse its discretion by permitting Dr. Proctor to testify concerning the detective's summary of the contents of the audio recording, as that summary formed part of the basis of Dr. Proctor's expert opinion. *See* TEX. R. EVID. 705(d).

We overrule Burd's fourth issue.

## Conclusion

We affirm the judgment of the trial court.

Evelyn V. Keyes
Justice

Panel consists of Justices Keyes, Lloyd, and Hightower.