COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



|  |  |  |
|---|---|---|
| | § | No. 08-22-00222-CV |
| IN RE COMMITMENT OF | § | Appeal from the |
| LARRY JOHNSON, | § | 427th Judicial District Court |
| Appellant. | § | of Travis County, Texas |
| | § | (TC# D-1-GN-20-007812) |

## **O P I N I O N**

### **BACKGROUND**

Appellant Larry Johnson was found to be a sexually violent predator and civilly committed as such in accordance with the Texas Health and Safety Code.[1] *See* TEX. HEALTH & SAFETY CODE ANN. §§ 841.003, 841.081. In a single issue, Appellant argues the trial court erred in admitting evidence of his adjudicated and unadjudicated sex offenses. We affirm.

### *Factual Background*

A petition was filed to civilly commit Appellant as a sexually violent predator and a jury trial was held. To establish Appellant is a sexually violent predator, the State needed to prove he

---

[1] This case was transferred from our sister court in Travis County, Texas pursuant to the Texas Supreme Court's docket equalization efforts. *See* TEX. GOV'T CODE ANN. § 73.001. We follow the precedent of the Third Court of Appeals to the extent it might conflict with our own. *See* TEX. R. APP. P. 41.3.

is a repeat sexually violent offender and has a "behavioral abnormality" that makes him "likely to engage in a predatory act of sexual violence." *See* TEX. HEALTH & SAFETY CODE ANN. § 841.003(a).

At trial, the State offered two expert witnesses to establish Appellant as a sexually violent predator. The State first offered Dr. Stephen Thorne, a psychologist, who has performed around 300 behavioral abnormality evaluations in Texas. The State also offered Dr. Michael Arambula, a psychiatrist, who has performed around 250 behavioral abnormality evaluations in Texas. Both doctors concluded Appellant suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence.

Dr. Thorne discussed the records he reviewed and relied on relating to Appellant's prior psychiatric diagnoses. Appellant objected to hearsay. The State responded the testimony was a Texas Rule of Evidence 705 exception because Dr. Thorne reviewed and relied upon the information as an expert. The trial court overruled the objection. Appellant then requested to take Dr. Thorne on voir dire for a Rule 403 and 704 hearing. The trial court agreed, excused the jury, and a voir dire examination of Dr. Thorne was conducted.

Dr. Thorne was questioned outside the presence of the jury as to the facts and data contained in the records he reviewed and relied upon in forming his opinion, and how best to communicate that opinion to the jury. Dr. Thorne was asked whether he could adequately explain how he reached his findings without being able to go into details of Appellant's offenses. Dr. Thorne responded that it would be very challenging to adequately explain his findings without getting into the facts and details of the offenses. According to Dr. Thorne, without the details, his diagnostic considerations would be on a "rather general level" and his findings would be difficult to support without the details of the offenses, which could render his expert opinion speculative.

Overall, Dr. Thorne testified to the importance of the underlying facts and details of Appellant's adjudicated and unadjudicated sexual offenses in identifying the risk factors, Appellant's diagnoses, and how to communicate his expert opinion to the jury. After considering the hearing testimony, the trial court again overruled Appellant's hearsay objection and determined the testimony regarding the underlying facts and details of the offenses was more probative than prejudicial and would be admitted as basis evidence for the expert testimony.

The testimony of Dr. Thorne resumed, and Appellant requested a hearsay in limine instruction be read to the jury. With no objection from the State, the trial court instructed the jury as follows:

> Larry Johnson, respondent, requests this Court to advise the jury as follows by the inadmissibility of hearsay. The respondent has requested a limiting instruction about the disclosure of hearsay facts or data underlying the expert's opinion. Hearsay is a statement made by a person at some time other than while testifying at the current trial or hearing, which a party offers into evidence to prove the truth that the matter asserted in the statement. Generally, hearsay is not admissible as evidence during trial. However, in this case, certain hearsay information contained in records was reviewed and relied upon by experts and will be presented to you through that expert's testimony. Such hearsay evidence is being presented to you only for the purpose of showing the basis of the expert's opinion and cannot be considered as evidence to prove the truth of the matter asserted. You may not consider this hearsay information for any other purpose, including whether the facts alleged in the records are true.

Dr. Thorne explained that in conducting a behavioral abnormality evaluation, he looks at risk factors, which include a person's history, life, and offenses, which have all been shown to relate to future sexual reoffending. According to Dr. Thorne, sexual deviancy and antisocial behavior are two of the major "umbrella factors" across studies of risk factors in a behavioral abnormality evaluation. Dr. Thorne found both factors present in Appellant. Dr. Thorne explained Appellant has committed multiple sexual offenses against multiple victims, and Dr. Thorne stated he reviewed the facts and details of Appellant's sexual offenses in making his determination.

3

According to Dr. Thorne, the facts and details of sexual offenses is where information relating to the risk factors are present—i.e., the type of victims chosen, the gender of the victims, the nature of the sexual behavior or sexual deviancy against those victims, and the access one has to his selected victims. Because not every sexual offense is the same, Dr. Thorne explained it goes beyond just the named offense, and thus, the details and facts of the sexual offenses are important to the evaluation.

Dr. Thorne then described the facts and details of the offenses in the record he used during his evaluation. As to a 1999 aggravated sexual assault offense, he described:

| The State: | And can you explain what the records indicate happened with this offense? |
|---|---|
| Dr. Thorne: | Yes. That Mr. Johnson sexually abused, I believe it was, a 19-year-old female named Casi. She was an escort working for an escort service. He called and requested someone to come to his house from this escort service. Casi came. When he arrived -- or when she arrived, he didn't have the money, ended up forcing her into sexual activity, in terms of -- and nonsexual violence as well. He choked her with his hands, choked her with a belt or a cord. Or I think it was called a rope or a cord. It was different things. He gave her bruises. He pulled her hair. He made her perform oral sex on him on multiple occasions. He told her that if she didn't make him ejaculate and swallow the ejaculate within 30 seconds, he was going to kill her. He put his penis into her vagina. Just again, sexual deviancy but also maybe -- part of sexual deviancy but also nonsexual violence towards Casi as well. |
| The State: | And so looking just at this offense, what risk factors did you find or what did you find significant with this? |
| Dr. Thorne: | Well, there is an identifiable victim that he engaged in sexually -- sexual violence and deviancy with or against. And also that he had no prior relationship with Casi. He had never met her before. So Casi is what is considered a stranger victim. And the research suggests that sex offenders who select stranger victims as opposed to victims in their own |

4

family or victims who they've had a prior relationship with, they're at greater risk for sexual reoffending in the future.

The State: And then . . . [w]hat sentence did Mr. Johnson receive in that case?

Dr. Thorne: In that case, he received a five-year prison sentence.

Dr. Thorne then explained the facts and details of a 2007 attempted sexual assault offense:

The State: And what do the records indicate happened with [the victim,] Aracely?

Dr. Thorne: That he, again, didn't have money -- which again, Aracely was from an escort service in Austin. She came to his residence. He didn't have the money to pay her. He forced her onto the bed. He, I think, pulled her shirt down, grabbed her breast, put his hand in her pants trying to grab her vagina. He had, what has been referred to as, a knife in his shirt pocket. And Aracely said she thought he was grabbing for that. She grabbed him, got the knife and she ended up getting away and leaving the residence.

The State: What risk factors did you see in this offense?

Dr. Thorne: Similar to what we've described. So now you have a second victim, who is also an escort, also a stranger victim, somebody who he had no prior relationship with, again, engaged in acts of sexual deviance and violence with her. But also what's important is, this offense against Aracely took place after Mr. Johnson was convicted of the initial offense against Casi that we just talked about. So he committed that first offense in November of '99, received a five-year prison sentence, was released from prison. And then in August of 2007, committed this offense against Aracely. In the literature, what they call that is persistence after punishment -- is kind of the terminology. And that's thought to be -- one of the most significant risk factors when looking at these cases is individuals who have committed a sex offense, been, quote/unquote, punished or convicted and then go on to reoffend and do it again. So that's different than -- I'm not trying to minimize it the other way. But if an individual has two victims before they're ever caught and punished, we look at that differently than if they have one

5

victim, they're caught and punished and then they go off and have another victim.

The State:     And what sentence did he receive for this sentence?

Dr. Thorne:    A fifteen-year prison sentence.

As for unadjudicated offenses, Dr. Thorne considered the facts and details of a 1999 allegation in which Appellant had Priscilla, an escort, come over to his residence, claimed he did not have any money, rolled over on top of her on the bed, held her arms behind her back, put his hands inside her shirt, and grabbed her breast. And another occurrence in 2007, in which Appellant was alleged to have had Maria, an escort, over at his residence, claimed he did not have any money, held a knife against her, and touched her breast from underneath her shirt. Dr. Thorne explained the two unadjudicated allegations factored into his opinion because they contributed to the showing of an attraction to the same type of victim selection and abuse—an attraction to calling escorts, not having the funds, then sexually abusing them by threatening violence, which was relevant to what access he has to the particular type of victim he selects. In other words, as Dr. Thorne explained, Appellant

> [C]an potentially have access to the same type of victim the day he's back in the community because he can call on a phone and request an escort to come over. You take that into consideration of what type of access will Mr. Johnson have to the type of victim that he has selected over the years. And so it's just something to take into consideration.

Dr. Thorne also diagnosed Appellant with sexual sadism—which is sexual arousal by the pain, suffering, or humiliation of another—and antisocial personality disorder.

Similarly, Dr. Arambula testified to the methodology used in his behavioral abnormality evaluations, and what was employed in respect to his evaluation of Appellant. Dr. Arambula explained he spends a significant amount of time obtaining information about the offenses an

6

individual has committed, and his evaluation in this case is based entirely on the facts and data contained in the records provided to him.

Then, Appellant extended the same objections made during Dr. Thorne's testimony to Dr. Arambula's testimony. The jury was excused and a voir dire examination of Dr. Arambula was conducted. Appellant relodged his running hearsay objection, which the trial court noted. Dr. Arambula's testimony resumed in the presence of the jury.

Dr. Arambula testified to the same factors as Dr. Thorne—Appellant's sexual deviancy, sexual sadism, antisocial behavior, prior convictions and unadjudicated offenses. He testified to the facts and details of the 1999 aggravated sexual assault offense against Casi, the 2007 attempted sexual assault offense against Aracely, the unadjudicated offense in 2007 against Maria, and two other cases that preceded the two convictions, which all involved escorts. We do note that Dr. Arambula did not go into as much detail as Dr. Thorne on any of the offenses during his testimony. He nevertheless discussed that he looks for similarities between the circumstances and victims, which is where the facts and details come into play. He confirmed he relied upon the facts and details of Appellant's adjudicated and unadjudicated offenses in making his determination that Appellant is a sexually violent predator.

### *Procedural Background*

After a jury trial, the jury unanimously found, beyond a reasonable doubt, that Appellant is a sexually violent predator, and Appellant was civilly committed. Appellant filed a motion for new trial. This appeal followed.

### DISCUSSION

In a single issue, Appellant argues the trial court abused its discretion in admitting the facts and details of his adjudicated and unadjudicated sexual offenses. We disagree.

7

### *Standard of Review*

We review the trial court's evidentiary rulings for an abuse of discretion. *In re Commitment of Hull*, No. 13-17-00378-CV, 2019 WL 3241883, at *8 (Tex. App.—Corpus Christi July 18, 2019, pet. denied) (mem. op.). An abuse of discretion occurs when a trial court fails to follow guiding rules and principles. *Id.* Reversal is warranted only if the error probably caused the rendition of an improper judgment. *Id.* In making this determination, we evaluate the entire case, considering the role the evidence played in the context of the trial. *Id.*

### *Applicable Law*

To civilly commit a person as a sexually violent predator, the State must prove the person: "(1) is a repeat sexually violent offender; and (2) suffers from a behavioral abnormality that makes [him] likely to engage in a predatory act of sexual violence." TEX. HEALTH & SAFETY CODE ANN. § 841.003(a). Under Texas Rule of Evidence 703, "[a]n expert may base an opinion on facts or data in the case that the expert has been made aware of, reviewed, or personally observed." TEX. R. EVID. 703. An expert in a Chapter 841 civil commitment proceeding may disclose details regarding the underlying facts or data the expert relied on in arriving at his or her opinion. *In re Commitment of Renshaw*, 598 S.W.3d 303, 314 (Tex. App.—Texarkana 2020, no pet.) (citing *In re Commitment of Stuteville*, 463 S.W.3d 543, 554-55 (Tex. App.—Houston [1st Dist.] 2015, pet. denied); *see* TEX. R. EVID. 705(a) (Stating an Opinion Without Disclosing the Underlying Facts or Data). However, "before an expert states an opinion or discloses the underlying facts or data, an adverse party in a civil case may . . . be permitted to examine the expert about the underlying facts or data," which must take place outside the jury's presence. TEX. R. EVID. 705(b) (Voir Dire Examination of an Expert About the Underlying Facts or Data). "If the underlying facts or data would otherwise be inadmissible, the proponent . . . may not disclose them to the jury if their

8

probative value in helping the jury evaluate the opinion is outweighed by their prejudicial effect, [and if] the court allows the proponent to disclose those facts or data the court must, upon timely request, restrict the evidence to its proper scope and instruct the jury accordingly." TEX. R. EVID. 705(d) (When Otherwise Inadmissible Underlying Facts or Data May Be Disclosed; Instructing the Jury).

The Beaumont Court of Appeals first established Rule 705(d) affords a trial court discretion to admit "facts and details" evidence because such evidence assists the jury in weighing expert testimony. *In re Commitment of Day*, 342 S.W.3d 193, 199 (Tex. App.—Beaumont 2011, pet. denied) ("Having each expert to explain which facts were considered and how those facts influenced his evaluation assisted the jury in weighing each expert's testimony and the opinion each offered regarding the ultimate issue in the case."); TEX. R. EVID. 705(a)("expert may state an opinion--and give the reasons for it--without first testifying to the underlying facts or data. But the expert may be required to disclose those facts or data on cross-examination").

In *Day*, the State developed, through three expert witnesses, "testimony about the details of [prior] offenses for which Day was imprisoned, the commission of other crimes and bad acts for which he was not convicted, and his behavior while in prison." *Day*, 342 S.W.3d. at 197. Day argued the details of the offenses and other bad acts created "outrage in the jury without adding to the determination of a behavioral abnormality." *Id*. at 198. The Beaumont court disagreed, and explained "the information each expert considered and the analytical process each expert employed differed from [one another]", and "[h]aving each expert explain which facts were considered and how those facts influenced [their respective] evaluation assisted the jury in weighing each expert's testimony and the opinion each offered regarding the ultimate issue in the case"—determining whether to civilly commit Day as a sexually violent predator. *Id.* at 199. The

court also emphasized that it presumed the jury followed the trial court's limiting instruction and ultimately held the trial court acted within its discretion in allowing the experts to discuss the details of the offenses and other bad acts committed within the records they reviewed. *Id.*

Since *Day*, Texas appellate courts have adopted this reasoning and have consistently held that facts and details evidence in sexually violent predator cases assists the jury in weighing an expert's testimony by explaining the basis for the expert's opinion. *See Stuteville*, 463 S.W.3d at 555-56; *see Renshaw*, 598 S.W.3d at 314-316; *see In re Commitment of Tesson*, 413 S.W.3d 514, 519-521 (Tex. App.—Beaumont 2013, pet. denied); *see In re Commitment of S.D.*, No. 10-17-00129-CV, 2020 WL 103721, at *4-5 (Tex. App.—Waco Jan. 8, 2020, no pet.) (mem. op.); *see In re Commitment of Bailey*, No. 03-17-00312-CV, 2018 WL 4140850 at *3-4 (Tex. App.—Austin Aug. 30, 2018, no pet.) (mem. op.); *see In re Commitment of Johnson*, 613 S.W.3d 613, 618-19 (Tex. App.—San Antonio 2020, pet. denied).

### *Analysis*

Appellant argues the trial court erred in admitting the facts and details of his adjudicated and unadjudicated sex offenses for the limited purpose of helping the jury evaluate the expert opinions because the probative value was outweighed by its prejudicial effect. Appellant requests we reject *Day* because it essentially eliminates the probative-versus-prejudice balancing test of Rule 705(d) and the jury would inevitably consider the facts and details "for their truth and improper purposes beyond the limited purpose of evaluating the expert opinions," which according to Appellant, "probably 'helped' the jury arrive at its verdict[.]" Appellant maintains, "it is difficult to imagine how the Rule 705(d) limiting instruction would have prevented the jury from doing so[.]"

Here, the trial court heard Dr. Thorne's and Dr. Arambula's methodology of reviewing the records, the application of the facts and details of Appellant's offenses to their expert opinions, and why that information was important for the jury in understanding their respective expert opinions. Before the jury heard any facts and details evidence, the trial court applied a balancing test and held voir dire examinations outside the presence of the jury, in compliance with Texas Rule of Evidence 705(b). *See* TEX. R. EVID. 705(b). After considering the hearing testimony, the trial court determined the testimony regarding the underlying facts and details of the offenses was more probative than prejudicial and would be admitted as basis evidence for the expert testimony. Before allowing the experts to disclose any facts and details in the presence of the jury, the trial court provided a limiting instruction, in compliance with Texas Rule of Evidence 705(d). *See* TEX. R. EVID. 705(d). The trial court explained to the jury that the information contained in the records was reviewed and relied upon by the experts and would be presented to them through the expert's testimony, and articulated that such evidence was being presented for the purpose of showing the basis of the expert's opinion and could not be considered as evidence to prove the truth of the matter asserted. The trial court specifically instructed the jury that they could not consider the hearsay information for any other purpose, including whether the facts alleged in the records are true. In addition to the voir dire examinations and verbal limiting instruction, the trial court also provided the jury with a written limiting instruction in the jury charge. The written, special limiting instruction read:

> In this case, certain hearsay information contained in records reviewed by an expert or experts was admitted before you through expert testimony. Such hearsay was admitted only for the purpose of showing the basis of the expert's opinion and cannot be considered as evidence to prove the truth of the matter asserted.

Appellant admits he relies "mostly on common sense and also on concurring and dissenting opinions" from the U.S. Supreme Court in support of his contentions, which discuss that it is "nonsense" for courts to indulge in the presumption that juries do not consider facts and details evidence for its truth.[2] However, unless the record demonstrates otherwise, we presume the jury followed the trial court's limiting instructions. *See In re Commitment of Day*, 342 S.W.3d at 199. The record does not demonstrate anything to the contrary. Without more than Appellant's reliance on assertions, "common sense," and dicta, we presume the jury followed the trial court's limiting instruction.

In a Chapter 841 civil commitment proceeding, the details of a sex offender's prior criminal offenses are admissible for the purpose of explaining the expert's opinion, and an expert may disclose the facts and details regarding the underlying facts the expert relied upon in reaching his opinion, subject to the trial court's application of a balancing test and providing any requested

---

[2] Appellant also relies on a Texas Criminal Court of Appeals (CCA) decision wherein the CCA articulated factors that should be accounted for in a Rule 403 balancing test, which the CCA described as asking: "how great is the proponent's 'need' for the extraneous transaction?" *Montgomery v. State*, 810 S.W.2d 372, 389-90 (Tex. Crim. App. 1990) (op. on reh'g). The CCA explained this inquiry breaks down into three subparts: "Does the proponent have other available evidence to establish the fact of consequence that the extraneous misconduct is relevant to show? If so, how strong is that other evidence? And is the fact of consequence related to an issue that is in dispute? When the proponent has other compelling or undisputed evidence to establish the proposition or fact that the extraneous misconduct goes to prove, the misconduct evidence will weigh far less than it otherwise might in the probative-versus-prejudicial balance." *Id.* at 390. Appellant focuses on the subpart that asks whether the proponent has other available evidence to establish the fact of consequence that the extraneous misconduct is relevant to show. For example, Appellant takes issue with Dr. Thorne's testimony wherein he shared that Appellant told Casi "if she didn't make him ejaculate and swallow the ejaculate within 30 seconds, he was going to kill her" which according to Appellant, "added little, if anything, to the 'fact of consequence' for which the 'facts and details' evidence was admitted [in] helping the jury evaluate whether the state experts had an adequate basis for saying that these 'facts and details' showed 'sexual deviancy' and 'sexual violence' committed against a 'stranger' victim.'" We disagree. We find it was reasonable for the trial court to find that Appellant threatening to kill if his victim did not commit the sexual acts he was commanding her to perform, was more probative than prejudicial in assisting the jury to understand the basis of the expert's opinion regarding Appellant's behavioral abnormality, which here, was his sexual deviancy and sexual violence against a specific type of victim. This related to Appellant's increased risk to sexually reoffend and to the ultimate issue of his behavioral abnormality. In any case, we find *Montgomery* distinguishable and inapplicable. In that case, the challenged evidence was extraneous offense evidence under Texas Rule of Evidence 404(b) and Montgomery was convicted of two counts of indecency with a child; it was not a civil commitment of a sexually violent predator case as we have here, and Rule 705 was not at issue as it is here. *Id.* at 374-397. Accordingly, we find Appellant's reliance on *Montgomery* is misplaced.

necessary limiting instructions. *See In re Commitment of Anderson*, 392 S.W.3d 878, 882-83 (Tex. App.—Beaumont 2013, pet. denied). In a sexually violent predator case, "having an expert explain the facts he considered, including past sexual offenses, and how those facts influenced his evaluation, assists the jury in weighing the expert's opinion on the ultimate issue." *Stuteville*, 463 S.W.3d at 555. Accordingly, in civil commitment cases, when evidence of sexual offenses is used by experts, it can be highly probative and helpful to the jury in explaining the basis of the expert's opinion that a person has a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. *Id.* at 556. For this reason, experts in civil commitment cases may disclose the underlying facts and details an expert relied on, including adjudicated and unadjudicated sex offenses. *Renshaw*, 598 S.W.3d at 314-316.

The complained of evidence here was offered to assist the jury in understanding the basis of the experts' opinions regarding Appellant's behavioral abnormality, which here, was mostly based on Appellant's sexual deviance and sexual violence against "stranger" victims which, according to the experts' opinions, were factors that increased Appellant's risk to sexually reoffend and contributed to their conclusion that Appellant is a sexually violent predator. The trial court employed a balancing test in its application of voir dire examinations, provided verbal and written limiting instructions, and allowed the evidence for the limited purpose of assisting the jury in understanding the basis of the experts' opinions. The trial court was consistent with case law and statutory law in allowing such evidence, and we decline to veer from established Texas precedent.

We conclude the trial court could have reasonably determined the probative value was not outweighed by the danger of unfair prejudice. The trial court did not abuse its discretion in admitting the underlying facts and details of Appellant's adjudicated and unadjudicated sex offenses for the limited purpose of assisting the jury in weighing the experts' opinions on the

ultimate issue of Appellant's behavioral abnormality. Accordingly, Appellant's sole issue is overruled.

## CONCLUSION

For these reasons, we affirm.

YVONNE T. RODRIGUEZ, Chief Justice

June 19, 2023

Before Rodriguez, C.J., Palafox, and Soto, JJ.