In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-11-00709-CV
_____

IN RE COMMITMENT OF EDWARD RUSSELL TESSON

On Appeal from the 435th District Court
Montgomery County, Texas
Trial Cause No. 11-06-06578 CV

OPINION

Edward Russell Tesson appeals from an order of commitment that was rendered by the trial court after a jury found Tesson to be a sexually violent predator. *See* Tex. Health & Safety Code Ann. §§ 841.001-.151 (West 2010 & Supp. 2012) (SVP statute). Tesson raises eleven issues in his appeal, challenging the constitutionality of the sexually violent predator statute, alleged errors that arose during jury selection, rulings to admit evidence that occurred during trial, the legal and factual sufficiency of the evidence supporting the jury's verdict, and the trial court's decision to excuse one of the jurors, allowing the jury to return a

1

verdict based on the decision returned by eleven jurors. Because we conclude that all of Tesson's issues are without merit, we affirm the trial court's judgment.

The Statute

Under the SVP statute, the State bears the burden of proving beyond a reasonable doubt that the person it seeks to commit for treatment is a sexually violent predator. *Id.* § 841.062 (West 2010). As defined by the Legislature, a sexually violent predator is a person who "(1) is a repeat sexually violent offender; and (2) suffers from a behavioral abnormality that makes the person likely to engage in a predatory act of sexual violence." *Id.* § 841.003(a) (West 2010). The term "'[b]ehavioral abnormality'" is defined by the SVP statute as "a congenital or acquired condition that, by affecting a person's emotional or volitional capacity, predisposes the person to commit a sexually violent offense, to the extent that the person becomes a menace to the health and safety of another person." *Id.* § 841.002(2) (West Supp. 2012). In *In re Commitment of Almaguer*, we explained that "[a] condition which affects either emotional capacity or volitional capacity to the extent a person is predisposed to threaten the health and safety of others with acts of sexual violence is an abnormality which causes serious difficulty in behavior control." 117 S.W.3d 500, 506 (Tex. App.—Beaumont 2003, pet. denied).

## Constitutional Challenge

In issue one, Tesson contends that the SVP statute is facially unconstitutional and that it violates his rights under the Fourteenth Amendment's due process clause. According to Tesson, in *In re Commitment of Bohannan*, 388 S.W.3d 296 (Tex. 2012), the Texas Supreme Court's interpretation of the statute permits a person's involuntary civil commitment solely on "'mere predisposition to violence.'" However, we disagree that *Bohannan* altered the State's burden of proving beyond a reasonable doubt that a person is a sexually violent predator. As we stated in *In re Commitment of Anderson*: "We do not read the *Bohannan* opinion as eliminating a statutory requirement, or as altering the proof required under the statute to find that a person is a sexually violent predator." 392 S.W.3d 878, 886 (Tex. App.—Beaumont 2013, pet. denied). We overrule Tesson's first issue.

## Jury Selection

In issue five, Tesson complains the trial court refused to allow his attorney to ask the potential jurors whether they would require the State to prove, beyond a reasonable doubt, that Tesson has "serious difficulty controlling his behavior as he sits here today[.]" A trial court's ruling to disallow a question asked by one of the

attorneys during voir dire is reviewed under an abuse of discretion standard. *In re Commitment of Hill*, 334 S.W.3d 226, 229 (Tex. 2011).

There are instances during voir dire when an area of inquiry may be proper but the particular question that is asked is not. In that case, the trial court may choose not to allow the question in the form it was asked. *Hyundai Motor Co. v. Vasquez*, 189 S.W.3d 743, 758 (Tex. 2006). With respect to questions asking potential jurors for a commitment to do something, the *Hyundai* Court explained that "counsel should propose a different question or specific area of inquiry to preserve error on the desired line of inquiry; absent such an effort, the trial court is not required to formulate the question." *Id.*

To preserve a complaint that the trial court improperly restricted voir dire, the complaining party must timely alert the trial court regarding the specific manner that he intends to pursue the matter to allow the trial court an opportunity to cure any error. *Id.*; *see also* Tex. R. App. P. 33.1(a). "Generally, where counsel merely states a subject area in which he wishes to propound questions, 'but fails to present the trial court with the specific questions he wishes to ask, the trial court is denied an opportunity to make a meaningful ruling and error is not preserved.'" *In re Commitment of Polk*, No. 09-10-00127-CV, 2011 Tex. App. LEXIS 1323, at *7

(Tex. App.—Beaumont Feb. 24, 2011, pet. denied) (mem. op.) (quoting *Odom v. Clark*, 215 S.W.3d 571, 574 (Tex. App.—Tyler 2007, pet. denied)).

Tesson complains the trial court prevented his attorney from asking the potential jurors if they would require the State to prove beyond a reasonable doubt that Tesson has a serious difficulty in controlling his behavior. In response to that question, and without expressly ruling on the State's objection which stated that the question misstated the law, the trial court gave the venire the following instruction:

> Ladies and Gentlemen of the jury panel, the lawyers do these things because they want to pick who they want to for the jury and you understand what's going on. I'm the guy who will give you the law and if you get on the jury you will be bound and obligated by the oath that you take as a juror to follow the law as I give it to you, irrespective of what the attorneys have said in the jury selection process and opening statements and in closing argument.

Then, Tesson's attorney restated the question, asking again if the potential jurors would "require the State to prove beyond a reasonable doubt that Mr. Tesson has difficult, serious difficulty controlling his behavior[.]" At that point, the trial court sustained the State's objection that the question was a misstatement of the law. Although the trial court suggested to Tesson's attorney that he "ask the entire question to the panel that will be presented to them in your view at the end of the trial[,]" Tesson's attorney did not do so; he also did not attempt to ask a question of

5

the potential jurors phrased the way the question was later presented to the jury in the charge.

The Texas statutory definitions of "sexually violent predator" and "'[b]ehavioral abnormality'" do not specifically include the phrase "serious difficulty controlling behavior." *See* Tex. Health & Safety Code Ann. §§ 841.002(2), 841.003(a). Consequently, the phrase "serious difficulty controlling behavior" does not appear in the charge. Nevertheless, we have stated that whether a defendant has a serious difficulty in controlling his behavior is a matter that is implicitly included in the statutory definition of the term "'[b]ehavioral abnormality.'" *See Almaguer*, 117 S.W.3d at 506. Therefore, the question on the matter was not improper, even though the question could have been phrased differently.

Nevertheless, the record shows the trial court would have allowed Tesson's attorney to ask questions about whether they would require the State to prove that Tesson had a behavioral abnormality or whether they would require the State to prove beyond reasonable doubt that Tesson is a sexually violent predator. Thus, the record does not show that the trial court foreclosed all inquiry on the topic of what the State would be required to prove. And, because the question asked for a commitment on an issue in a manner using terms that are different from the terms

used in the charge, the trial court might have considered the question Tesson's attorney posed to the potential jurors as one that could create confusion. *See Hyundai*, 189 S.W.3d at 758. Because Tesson's attorney did not make an effort to rephrase his inquiry and comply with the trial court's suggestion, the record does not present a sufficient basis for reviewing a claim that the trial court abused its discretion by limiting voir dire with respect to the topic at issue. *See id.* at 760. We overrule issue five.

In issue eleven, Tesson complains the State's attorney informed the potential jurors during voir dire that at the end of the trial they would probably be asked one question that addressed whether Tesson is a sexually violent predator, and that they would just need to answer the "one question before you and then le[t] the judge handl[e] whatever happens next." According to Tesson, the prosecutor's statement "minimized the important role that the jury had in this case."

The record does not indicate that Tesson objected to the statement that he complains about in issue eleven. *See* Tex. R. App. P. 33.1(a); *see also In re Commitment of Villegas*, No. 09-12-00085-CV, 2013 Tex. App. LEXIS 1596, at *14 (Tex. App.—Beaumont Feb. 21, 2013, no pet.) (mem. op.). Therefore, we overrule issue eleven because it was not preserved for appellate review.

7

Evidentiary Issues

In five issues—issues three, four, six, seven, and eight—Tesson complains the trial court improperly allowed the jury to consider evidence that he contends was inadmissible. "We review a trial court's evidentiary rulings for abuse of discretion." *Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 906 (Tex. 2000); *see In re Commitment of Salazar*, No. 09-07-345 CV, 2008 Tex. App. LEXIS 8856, at *19 (Tex. App.—Beaumont Nov. 26, 2008, pet. denied) (mem. op.). A trial court abuses its discretion when it acts without reference to any guiding rules and principles, or if it acts arbitrarily and unreasonably. *E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549, 558 (Tex. 1995); *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985). Error may not be predicated upon the admission of evidence unless the party's substantial rights are affected. Tex. R. Evid. 103(a). Unless the error in admitting evidence probably caused the jury to render an improper judgment, we will not reverse a jury's verdict. *See* Tex. R. App. P. 44.1(a)(1).

Issues three, four, and eight assert the trial court erred by allowing the State's experts to disclose various facts and data on which their respective opinions were based. In issues three and four, Tesson complains that the trial court improperly admitted details about his prior sexual offenses, both those he had been

8

convicted of as well as alleged uncharged offenses. Tesson objected when the State's experts, Dr. J. Randall Price and Dr. Sheri Gaines, disclosed details about his prior sexual offenses. The information the experts disclosed is contained in records the State's experts reviewed before testifying. The trial court overruled Tesson's objections and allowed the experts to disclose the data on which the expert opinions were based.

The trial court gave the jury limiting instructions when Dr. Price and Dr. Gaines explained the underlying data that they felt pertinent to their respective opinions. The instruction given during Dr. Price's testimony states:

> Hearsay is defined as a statement -- excuse me -- other than one made by the declarant or the person testifying, that is, and other than a deposition, that is being presented to the jury that is offered to prove the truth of the matter asserted. Hearsay simply is not admissible as evidence in a trial to prove its contents. Now, hearsay is being presented from records examined by an expert. It was presented to show you the basis of the experts' opinion and to afford you the opportunity to decide the weight and the credibility to be given to the expert's opinion but not as primary evidence for you to consider as being truthful.

The trial court provided the jury a similar instruction when Dr. Gaines explained how she used information from Tesson's records in forming her opinion. Although the limiting instructions were given in response to Tesson's requests, they were intended to guide and limit the jury's use of the data in the records disclosed by the State's experts to the jury during trial.

9

A limiting instruction did not accompany Dr. Price's disclosure to the jury that the report of Dr. Charles Woodrick reflected Dr. Woodrick's opinion that Tesson has a behavioral abnormality. Dr. Woodrick did not testify at Tesson's trial, and the record reflects that Dr. Woodrick was one of the members of a multidisciplinary team who conducted an initial evaluation on Tesson. The disclosure of Dr. Woodrick's opinion occurred after Dr. Price explained that he had reviewed and relied on Dr. Woodrick's report in forming his opinion. According to Dr. Price, he, Dr. Gaines, and Dr. Woodrick all concluded that Tesson has a behavioral abnormality.

However, Tesson did not request that the trial court give the jury a limiting instruction when Dr. Price disclosed Dr. Woodrick's opinion during Tesson's trial. Although Tesson complains about the disclosure of Dr. Woodrick's opinion in issue eight, at that point in the trial, the trial court had already given the jury several limiting instructions that concerned testimony which was based in part on hearsay evidence. One of these instructions stated:

> Every time that there's been an objection of hearsay by either Counsel, you are to keep in mind that I am overruling the objection, that although it is hearsay, but it is data or information obtained by this witness upon which he based his opinion. It is not primary evidence. It is not subject to believe [sic] to prove the matter asserted in that hearsay, but it gives you -- I'm required to let you have it as knowledge of the basis upon which his opinion is founded. And you can decide as you see fit about whether to consider his opinion valid

10

or not and how much weight should be given to it. But the hearsay portion is not primary evidence for you to consider.

Rule 705 of the Texas Rules of Evidence allows a trial court to admit the underlying facts or data on which an expert has based an opinion. *See* Tex. R. Evid. 705(a); *In re Commitment of Camarillo*, No. 09-12-00304-CV, 2013 Tex. App. LEXIS 7212, at **7-10 (Tex. App.—Beaumont June 13, 2013, no pet.) (mem. op.). Rule 705(d) provides:

> When the underlying facts or data would be inadmissible in evidence, the court shall exclude the underlying facts or data if the danger that they will be used for a purpose other than as explanation or support for the expert's opinion outweighs their value as explanation or support or are unfairly prejudicial. If otherwise inadmissible facts or data are disclosed before the jury, a limiting instruction by the court shall be given upon request.

Tex. R. Evid. 705(d). In the charge, the trial court gave the jury a similar limiting instruction, informing the jury that the information "was admitted only for the purpose of showing the basis of the experts' opinion[s] and cannot be considered as evidence to prove the truth of the matter asserted." When a trial court gives the jury a limiting instruction, we presume it was followed. *See In re Commitment of Day*, 342 S.W.3d 193, 198-99 (Tex. App.—Beaumont 2011, pet. denied).

In Tesson's case, the trial court could have reasonably concluded that the disclosure of the data at issue would be helpful to the jury because the disclosure of the data would allow the jury to understand how the State's experts had formed

their respective opinions. Given the purpose for admitting the evidence, in explanation or support for the experts' opinions, the trial court did not abuse its discretion by admitting the testimony made the subject of issues three, four, and eight. *See Camarillo*, 2013 Tex. App. LEXIS 7212, at **9-10. Additionally, in light of the jury instructions regarding the use of hearsay by experts, the trial court's decision to admit the evidence at issue was not unfairly prejudicial. *See id.* at *10. We overrule issues three, four, and eight.[1]

In issues six and seven, Tesson argues the trial court should have granted his motions to strike the testimony of Dr. Price, a forensic psychologist, and the testimony of Dr. Gaines, a forensic psychiatrist. According to Tesson, Dr. Gaines's testimony reflects that she did not properly apply the statutory definition of

---

[1]Having already concluded that the trial court did not abuse its discretion in admitting the evidence at issue, we need not reach Tesson's issue three complaint arguing that the trial court improperly admitted the evidence in his sex offender treatment records as an admission by a party opponent under Rule 801 of the Rules of Evidence. *See* Tex. R. App. P. 47.1. We also need not consider Tesson's argument claiming that the State's use of the hearsay evidence at issue violated the Fourteenth Amendment because Tesson did not preserve that complaint for our review. *See* Tex. R. App. P. 33.1(a); *In re Commitment of Matlock*, No. 09-11-00670-CV, 2012 Tex. App. LEXIS 8302, at **7-8 (Tex. App.—Beaumont Oct. 4, 2012, pet. denied) (mem. op.) (concluding that general references to the Fourteenth Amendment and due process were not sufficiently specific to preserve the complaint for review). Finally, to the extent that Tesson complains in issue eight about improper jury argument, Tesson failed to preserve that argument for our review because he failed to object when the prosecutor made the argument that Tesson complains of in issue eight. *See* Tex. R. App. P. 33.1(a).

"behavioral abnormality" in reaching her conclusions. *See* Tex. Health & Safety Code Ann. § 841.002(2). However, Dr. Gaines testified that she used the statutory definition in forming her opinions. Nonetheless, Tesson contends that Dr. Gaines demonstrated her lack of understanding regarding the term "behavioral abnormality" when she testified during cross-examination that she was not aware that serious difficulty controlling behavior is part of the definition of the term "behavioral abnormality."

The statutory definition of the term "behavioral abnormality" does not expressly include the language that Tesson suggests an expert is required to apply. The record also shows that Dr. Gaines was familiar with and applied the statutory definition for the term "behavioral abnormality," so the record does not support Tesson's argument that Dr. Gaines applied an improper definition in reaching her opinions. We hold the trial court acted within its discretion by denying Tesson's motion to strike Dr. Gaines's testimony, and we overrule issue six.

In issue seven, Tesson argues that the testimony of Dr. Price and the testimony of Dr. Gaines are unreliable because they both assumed that having a behavioral abnormality makes a person automatically likely to engage in a predatory act of sexual violence. According to Tesson, the State's experts failed to appreciate any difference between a person who is predisposed to commit a

13

sexually violent offense and a person who suffers a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. *Compare id*. § 841.002(2) (using the term "predisposes" in the definition of "behavioral abnormality"), *with id.* § 841.003(a)(2) (using the term "likely" in the language describing the requirements to determine whether a person is a sexual violent predator).

Tesson attempts to draw a distinction in expert witness testimony that the Texas Supreme Court did not require of the factfinder in *Bohannan*. *See Bohannan*, 388 S.W.3d at 303. According to the *Bohannan* Court, "whether a person 'suffers from a behavioral abnormality that makes the person likely to engage in a predatory act of sexual violence' is a single unified issue." *Id*. (quoting Tex. Health & Safety Code Ann. § 841.003(a)(2)).

We are not persuaded that the expert testimony is objectively unreliable. During closing arguments, the State explained that the question for the jury was whether Tesson has a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence, and it argued that the evidence supports such a finding. The charge submitted to the jury contains the definitions of "sexually violent predator" and "behavioral abnormality" found in the SVP statute. *See* Tex. Health & Safety Code Ann. §§ 841.002(2), 841.003(a). Because the State's experts

14

used the statutory definitions of the terms at issue in reaching their conclusions, we conclude that the trial court did not abuse its discretion in denying Tesson's motions to strike. We overrule issue seven.

## Sufficiency of the Evidence

In issues nine and ten, Tesson argues the evidence admitted during his trial is legally and factually insufficient to prove he is suffering from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. According to Tesson, the jury's finding cannot be supported by the "'incompetent'" testimony of the State's experts, Dr. Price and Dr. Gaines.

To prevail on his legal sufficiency issue, Tesson is required to demonstrate that no evidence supports the jury's finding. *See Croucher v. Croucher*, 660 S.W.2d 55, 58 (Tex. 1983); *Christus St. Mary Hosp. v. O'Banion*, 227 S.W.3d 868, 873 (Tex. App.—Beaumont 2007, pet. denied). Under the SVP statute, the State must prove, beyond a reasonable doubt, that "the person is a sexually violent predator." Tex Health & Safety Code Ann. § 841.062(a). "[T]he burden of proof at trial necessarily affects appellate review of the evidence." *In the Interest of C.H.*, 89 S.W.3d 17, 25 (Tex. 2002). Because the SVP statute employs a beyond-a-reasonable doubt burden of proof, when reviewing the legal sufficiency of the evidence, we assess all the evidence in the light most favorable to the verdict to

15

determine whether any rational trier-of-fact could find, beyond a reasonable doubt, the elements required for commitment under the SVP statute. *In re Commitment of Mullens*, 92 S.W.3d 881, 885 (Tex. App.—Beaumont 2002, pet. denied).

We also note the standard that applies to reviewing a factual sufficiency challenge in SVP cases. Under factual sufficiency review, we weigh the evidence to determine "whether a verdict that is supported by legally sufficient evidence nevertheless reflects a risk of injustice that would compel ordering a new trial." *Day*, 342 S.W.3d at 213. Since the State is burdened by a beyond-a-reasonable-doubt standard in SVP cases, the risk of injustice is necessarily slight when the evidence admitted at trial was legally sufficient to support the jury's verdict. *Id*. Nonetheless, "if in the view of the appellate court after weighing the evidence, the risk of an injustice remains too great to allow the verdict to stand, the appellate court may grant the defendant a new trial." *Id*.

Tesson focuses on the reliability of the testimony of the State's experts in arguing his legal and factual insufficiency issues. He contends that the testimony of the State's experts was too conclusory to establish that it was reliable, that the experts improperly considered hearsay when reaching their conclusions, and that the experts failed to demonstrate an understanding of the legal concepts that apply to sexually violent predators. In resolving Tesson's other issues, we have rejected

16

Tesson's arguments attacking the reliability of the opinions expressed by the State's experts. During the trial, the State's experts explained the supporting basis or foundation for their respective opinions. The State's experts are licensed in their respective fields, interviewed Tesson, and reviewed various records containing information relevant to Tesson's history. The records reviewed by the State's experts are the type of records relied upon by health experts in forming opinions, and the assessments by the State's experts were based on their training as professionals. The record contains the expert's explanations about how Tesson's records were used. The record also contains evidence of actuarial tests that Tesson took, and Dr. Price explained how he relied on these tests in evaluating Tesson's risk to reoffend. The evidence shows that Tesson had previously been convicted of more than two sexually violent crimes, and contains expert testimony that Tesson suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence.

The jury was entitled to draw reasonable inferences from basic facts to determine ultimate fact issues, and to resolve conflicts and contradictions in the evidence by believing all, part, or none of a witness's testimony. *In re Commitment of Barbee*, 192 S.W.3d 835, 842 (Tex. App.—Beaumont 2006, no pet.). Considering the evidence in the light most favorable to the verdict, we conclude

17

the jury could reasonably find beyond a reasonable doubt that Tesson has a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. *See Mullens*, 92 S.W.3d at 885. The record does not reflect a risk of injustice that compels granting a new trial. *See Day*, 342 S.W.3d at 213. Because the evidence is legally and factually sufficient to support the jury's verdict, we overrule issues nine and ten.

## Eleven Jurors

In issue two, Tesson complains that the trial court, over his objection, failed to grant his request for a mistrial and allowed the jury to return a verdict with only eleven jurors. According to Tesson, section 841.146(a) of the Texas Health and Safety Code provides that a civil commitment case cannot be decided by less than twelve jurors. *See* Tex. Health & Safety Code Ann. § 841.146(a) (West 2010) (providing that in SVP cases, "[t]he number and selection of jurors are governed by Chapter 33, Code of Criminal Procedure"). In response, the State argues that Rule 292(a) of the Texas Rules of Civil Procedure allows a trial court to proceed with fewer than twelve jurors when a juror becomes "disabled from sitting[.]" *See* Tex. R. Civ. P. 292(a).

In his appeal, Tesson agrees the trial court did not abuse its discretion when, on the third day of the trial, the trial court dismissed one of the jurors as disabled.

18

However, after the trial court dismissed the disabled juror, Tesson asked for a mistrial. His motion was denied.

Generally, trial courts have discretion when they are asked to grant a motion for mistrial. *Onstad v. Wright*, 54 S.W.3d 799, 808 (Tex. App.—Texarkana 2001, pet. denied). A trial court abuses its discretion when it acts without reference to any guiding rules or principle. *Downer*, 701 S.W.2d at 241-42. If Rule 292(a) applies in SVP cases, trial courts clearly have discretion to allow eleven remaining jurors to return a verdict when one of the jurors becomes disabled during the trial. Rule 292(a) states:

> a verdict may be rendered in any cause by the concurrence, as to each and all answers made, of the same ten or more members of an original jury of twelve . . . . However, where as many as three jurors die or be disabled from sitting and there are only nine of the jurors remaining of an original jury of twelve, those remaining may render and return a verdict. If less than the original twelve . . . jurors render a verdict, the verdict must be signed by each juror concurring therein.

Tex. R. Civ. P. 292(a).

According to Tesson, there is a conflict between section 841.146(a), which adopts article 33.01 of the Texas Code of Criminal Procedure requiring a jury of twelve people, and Rule 292(a), which allows juries composed of fewer than twelve to return a verdict when some jurors become disabled. *See* Tex. R. Civ. P. 292(a); Tex. Code Crim. Proc. Ann. art. 33.01(a) (West 2006) (providing that "in

the district court, the jury shall consist of twelve qualified jurors"). While article 33.01 requires twelve persons to be selected, requiring a trial to begin with twelve jurors does not control what occurs if one or more jurors become disabled. *See* Tex. Code Crim. Proc. Ann. art. 33.01. We note that article 33.01 does not specify the number of jurors required to return a verdict. *See id.* In contrast, Rule 292(a) specifically addresses how many jurors are needed to return a verdict in a civil case, and the SVP statute makes SVP proceedings subject to the Texas Rules of Civil Procedure in the absence of a conflict. *See* Tex. R. Civ. P. 292(a); Tex. Health & Safety Code Ann. § 841.146(b) (West 2010) (providing that "[e]xcept as otherwise provided by this subsection, a civil commitment proceeding is subject to the rules of procedure and appeal for civil cases"). We see no conflict in a requirement that a jury to begin with twelve jurors and a requirement that allows fewer than twelve jurors to return a verdict when one or more jurors become disabled.

Additionally, Chapter 841, which governs SVP cases, does not conflict with Rule 292(a)'s provision that allows a jury of less than twelve to return a verdict if jurors become disable during the trial. *See* Tex. Health & Safety Code Ann. §§ 841.001-.151. We conclude that Rule 292(a) provides the guiding rule or principle,

20

and that the trial court properly applied the rule by excusing the disabled juror and allowing the remaining jurors to return a verdict. We overrule issue two.

Having overruled all of Tesson's issues, we affirm the judgment rendered by the trial court.

AFFIRMED.

_____
HOLLIS HORTON
Justice

Submitted on June 7, 2013
Opinion Delivered October 17, 2013
Before McKeithen, C.J., Gaultney and Horton, JJ.

21